Meyer v. Huber. Good morning, Your Honors. Theodore J. Boutrous, Jr. representing Huber. This appeal turns on a very simple legal question. Would a reasonable person have known he was entering into a contract subject to Huber's terms of service when he downloaded Huber's app on his smartphone, entered his personal and credit card information, clicked the register button to open up an Huber account, and then started using Huber's services? The answer is yes. Both the conspicuous content of the sign-up screens on the Huber app, as well as the transactional context provided notice to a reasonable person that a contract was being formed as a result of the account registration process. This Court's decisions in cases like Nicosia, SPECT, Schnabel, all point in one direction, and that is reversal. Indeed, more than a dozen district court decisions, including four from the Southern District of New York, have upheld precisely, well, very similar, nearly identical registration processes on smartphone apps as well as websites. Well, you know, the Court and then the parties in their briefs discuss the facts of all of these cases and whether they are sufficiently similar, but let me ask you to focus on the fact that, in this case, the registration button, which is the signal that the party is registering, agreeing, whatever, anything, appears on the site before the notice, and the suggestion by the district court and in some of the cases is that it's possible that the consumer will work sequentially and therefore will have registered before realizing what registration means. Why don't you tell us why we shouldn't view it that way? Definitely, Your Honor. In fact, this case, it was a smartphone application, and the register button and the sentence, the one sentence on the screen, are all on the same screen on the phone, so it's not . . . I understand that, but the registration button is before. Yes. It's not as if your client set up the page to say, you know, give us all the information and then told the consumer, if you register, you will agree to our terms and conditions and privacy, et cetera. We'll get into whether that's enough, and only then does the person press register. They press register before. Correct, Your Honor, and that is virtually how every other screen works, and here, Your Honor . . . Every other screen? Yes. I'll just give you examples. For example, on page 21 of our brief, we have the guilt screen, which is another website for ordering retail goods. That's an example. The Facebook screen, usually the terms and conditions and the if you agree is below the register button. These have not been the subject of court case? Yes. In the guilt case, the Southern District of New York, the district judge in 2014 found that there was mutual sin, and to your point, I think it goes to a really fundamental difference than paper contracts or even website contracts. When you have a smartphone, you're seeing the whole phone at once. You can't miss the terms and conditions pop out at you in blue hyperlink, and everyone, the reasonable consumer using a smartphone application like this . . . I kind of conducted my own personal survey in just trying to determine what a reasonable person thinks, and I'm getting answers both ways. Is it reasonably conspicuous, and do you understand that you're agreeing to a contract? One of my questions is the procedural posture below. This was done on motions, a motion to compel, which should be treated like a trial. Your Honor, you've put your finger on another . . . I mean, in other words, if we were to conclude that reasonable people could disagree, should there be a trial? I mean, how would that question be resolved? Yes, Your Honor, and in Nicosia, the court was at the motion to dismiss stage, as Your Honor will remember. Here, this is a motion to compel arbitration, which this court in Nicosia and Schnabel said is basically judged by the summary judgment standard. So if there are disputed . . . of the contract, you shall proceed summarily to trial, and I think the other side argues that you were offered a hearing at one point, and . . . That's incorrect, Your Honor. What happened was there was an argument on the motion to compel based on the summary judgment standard. There was a hearing on a discovery issue that had nothing to do with the motion to compel arbitration, but one of the fundamental errors that the district court committed here was there were no factual disputes walking into that hearing. The plaintiffs did not claim that there was illegibility or that you couldn't see the terms and conditions on the screen or anything like that. The district court created a document, a reduced version, and then found that was illegible. The district court was also presented with PowerPoints, and I mean, just because in the opinion that's the way it came out, that doesn't mean that's what the district court looked at. Another question is, if you had a trial, would there be other evidence that could be presented or would the factual record be essentially what it is now? I thought about that, Your Honor. I think there would be other evidence because the district court found a factual dispute. The court said that in its view there was illegibility of the we, I agree by opening account screen. He said it was illegible, and then made other which, as this court said in Schnabel, all the facts should be looked at in the light most favorable to the party against whom the motion to compel is going to be resolved. So that was wrong, but we would put on, we'd have the phone screen. The phone screens are vivid, clear on a Samsung and on an iPhone. And they're considerably smaller than the ones you gave us in our brief, right? 5.1 inches across, not 6 1⁄2. They're smaller, but there was no, but on page 40 of our brief, Your Honor, we included a more accurate depiction at the same size that the district court created. So if Your Honor looks back at page 40 of our brief and page 560 of the appendix, and you'll see, it's very clear. Those are smaller than the actual screen and don't depict what one sees on a smartphone. It's a different reading experience. So, and just so you know, there was no dispute when we made our copy for the court that's on page eight that's in the exhibit. Plaintiffs weren't saying that it was illegible or you couldn't read it. That font size is all over the Uber app and all over websites and apps in it. And so I think on going to Judge Chin's point, in a trial, we would have the phones, we would have the screens, we would have expert witnesses if we need to, we would have individuals testify and talk about these issues. We could ask Mr. Meyer to testify. He didn't dispute that he couldn't read it or see it. He said when he read the declaration of the Uber official who put a declaration and that reminded him that he had gone through this process. And so this is a very common process. So to the extent that the district court appeared to be finding the fact, it was both inappropriate procedurally you would say, as well as owed no deference. Exactly, Your Honor. And in Nicosia, the court said there, where a party had submitted extraneous material, it was improper for the district court to consider it. Did you argue below that there should be a trial or hearing? At that point we filed a motion to compel arbitration because the facts appeared to be undisputed. And the plaintiffs in their brief here on page 33 and 34 say that the facts of the screen and everything was undisputed and it was the interpretation of the facts. But the problem with the two fundamental flaws in the district court's order was it made factual findings against Uber and Mr. Kalanick even though the facts were supposed to be undisputed. And if there were material factual disputes, then under the Federal Arbitration Act the case was supposed to go to a summary trial. And so we would be ready to do that. I think as a matter of law, and going back to the images, we also have the Selden case from the District of Columbia. The district court, page 13 of our brief, finding assent. And there is assent. You click on the register button to sign up for the services. It's very similar, Your Honor. And again, it's below the sign up button. And that's how they all are. For the questions, though, the sequence, whether register is understood by the average consumer to be entering into a contract, whether terms of service is understood to be terms that will apply to the consumer. I mean, you know, it does say you agree to the terms of service. But these were the things the district court identified that are not disputed. Isn't that how we would decide this, whether or not those readings of those different parts of the notice are sufficient? That's what we argue, that as a matter of law, and that's what the district court in the Selden case, the district court in the Gilt case, and the district court in D.C. was really looking to this court's decisions in spec in other cases. So it was looking at this court's application of the law. And, Your Honor, someone who goes to sign up on an app, downloads the app, puts their credit card information in, knowing that they're going to be charged by the company for a service, and see, and is faced with a disclosure that says, by signing, opening an account, you are agreeing to these terms of service, and there's a hyperlink. We believe that a reasonable person had notice, an inquiry notice, and we cited, this isn't a new concept, although the courts are applying these principles in the, in a new area, but the Taussig case from the California Supreme Court, California law has been applied here, 1901. These are from the free download cases, in which a different measure of prudence on part of the person clicking might be required. Exactly. In the spec case, which was the free download case, then Judge Sotomayor noted that there, first it's screaming at you, this is free, this is free, on one screen, and there wasn't a smartphone. It was long before the iPhone came out, even, and it was, you had to scroll down, once you got your free download, most people would likely stop scrolling, but you had to scroll down, and then there was a terms and conditions button. Here, it's right there on the phone. It's the only sentence on the screen, and as I said, the hyperlink pops out, and in the Selden case, again, from the District of Columbia, District Court noted that in today's marketplace, a reasonable user with a smartphone knows that's a hyperlink, knows they're signing up for terms and conditions, and they're readily available, and that's been a principle in California law for over a century. So, it's whether the notice is reasonably conspicuous to the prudent consumer, but ultimately, it's kind of a legal question, is it? In what circumstances are we willing to impose an obligation or to understand assent to whatever terms and conditions were flagged? Yes, Your Honor, I do think it's a legal question, and again, I go back to this 1901 decision from the California Supreme Court. It was a receipt. We have the image in our reply brief. I believe it's on page 14, and it was a receipt that the person from the company storing barrels of alcohol got when they went to the warehouse. It was a receipt on the side. It said, you're on your own if there are leaks, and the Supreme Court of California said it was a disclosure much less conspicuous than we have here, and the California Supreme Court said, you had it, you could have looked at it, you accepted the services, and you had a duty to inquire further, and that's the simple principle we're asking be applied here. And could I just ask about, if the terms of service change over time, are you, as a consumer, is it your view that the consumer is responsible for knowing those, absent any, even without any flag that they have changed? Your initial registration makes you liable because the consumer can't really change these? Well, it would depend. Uber and other companies will send out a notice in some instances if the change is, you'll get an email to where it is on the app. If you go to your app, if you have an Uber app, there's a menu bar. If you click it, it says legal. You can click on it. It'll have the current terms of service. So there is a lot more notification than we used to have with the shrink wrap contracts that were upheld back in the day. Other contracts, it's all right there at your fingertips, and consumers these days, as the amicus briefs show, know about this. Why don't they just put an I agree button that would end the question, wouldn't it? There are different ways to do it, but I don't think it would have made it appreciably more conspicuous because you're signing up for an account, you're registering, you're giving your credit card information for an ongoing forward-looking service, which is also much different than a lot of these other cases. And here you're registering, and it's clear from the transactional context, in the words of this court inspect, that you're signing up, you're opening an account, and then it says you agree to these terms, and they're right there, easy to access. And we believe the context, the affirmative assent by touching the register button, and the conspicuousness of the disclosures created a contract. If the court were to find against us on that point, then we would be entitled to a summary trial under the FAA. And I'll reserve, I think I reserve two minutes. Thank you. Good morning. May it please the court, my name is Jeff Wadsworth, on behalf of the plaintiff, Applee Spencer-Meyer. In this case, let me start with the defendants have never asked for a trial. They never asked for any evidentiary hearing, not in the lower court, not in their briefs to this court. Nonetheless, under U.S. Titan, what happened in the district court where there was factual finding, on a paper record, where there were declarations submitted, there was a trial under the FAA, just like in U.S. Titan. So there's no need to send this back for a trial. The district court made factual findings, and at page 25 of the special appendix, the district court says, the court finds that Plaintiff Meyer did not have reasonably conspicuous notice of Uber's user agreement, including its arbitration clause, or events, unambiguous manifestation of assent to those terms. Most importantly, the Uber registration screen, as explained in SUPRA, did not adequately call users' attention to the existence of terms of service, let alone to the fact that by registering a user Uber, a user was agreeing to them. In this case, there is no reasonably conspicuous notice. There is no unambiguous manifestation of assent. Now, to the extent reasonable minds could disagree about that, Nekosha tells us that those are factual questions, and again, as I just read, the district court made those factual findings. Did the district court make those findings in the proper procedural context? I mean, could there be a more complete factual record that would help me make a better decision? Well, again, the defendants never asked for such a more complete record. In fact, in their notice of motion, which we cite in our supplemental appendix at page 111, they ask that the motion be determined on the basis of this notice of motion, the memorandum of points and authorities offered in support, the supporting declaration of Vincent Mee in exhibits, all documents in the court's file, any matters of which the court may take judicial notice, and any evidence or argument presented in this matter. And that's exactly what the district court did, is it considered all of those things. And again, as in U.S. Titan, the paper record itself can constitute a trial under the FAA, and those are factual findings that this court should defer to. If we look at a reasonable person who is reasonably familiar with smartphones, is it not obvious that when you click on the register button, you are agreeing to certain terms and conditions? Not at all. Not at all, Your Honor. In fact, as the 51 law professors who supported our position in an amicus brief in this case have noted, to register means to put your name on an official list. It does not mean that you are engaging in some complex contractual obligations. But you've just given your credit card information. This is for signing up for an ongoing service that you then use over time, repeatedly. So I want to be clear that the credit card information that's inputted on that register screen, of course, as the court's already noted, that's at the very top, and then the register button is immediately below that. The credit card information is provided so that the drivers of Uber, who are not employees of Uber, so that the drivers of Uber can later on, when the registrant takes a ride, can be charged. There's reason to want to know what the terms and conditions are for the use of that credit card information. And so, I mean, I pressed counsel on the fact that the registration button was before the critical language here, but the language at the bottom says, by creating an account, you agree to. So it's not, we agree that we will only do certain things. It's that you're going to agree, you the consumer, to the terms of service and privacy policy. So I don't know how you can argue that it's not at all a notice here. Whether it's adequate may be a question, but to suggest it's not a notice at all strikes me as a difficult argument for you. Well, the notice itself was not conspicuous, and so we know under spec that it's, that's That's a big step away from not at all. Well, I'm sorry, Your Honor, I think the question was about whether inputting credit card information meant that the registrant knew that they were entering into an agreement. And as we've pointed on our brief That wasn't the question. I misunderstood. You enter your credit card information, then there's a button that says register, and then below it, admittedly, it would be clearer if this were above it, but below it, it says, by creating an Uber account, you agree to the terms and policy. You know, unless you're someone who still has a flip phone and doesn't know what highlighted in blue means, you know, individuals will understand that they are entering into some kind of a contract, and if they're curious, they'll click on the hyperlink and get to the terms of service. That, is that not fair? But not if they're not on notice of it. And again, with the, like in the COSHA Is this reasonably conspicuous notice? Right? That is, that is one of the two questions. That's the first part. And here, we submit it's not reasonably conspicuous, and we certainly submit that the district court's finding that it wasn't reasonably conspicuous was entitled to deference. When we look at what's reasonable, am I looking at a reasonably smartphone savvy person, or am I looking at my secretary who still has a flip phone? I mean, who's the reasonable person here? I think just a reasonable person, a reasonably prudent person who is engaging in this activity. A person who uses Uber? Not necessarily, but someone who is, I mean, and again, we, I don't think it's necessarily someone who's engaging in using Uber, but it's someone who would be, you know, reasonably familiar with this type of electronic agreement. A person who wants to use a smartphone app to engage a car. Would that person, such a person, understand that she was entering into some kind of an agreement? Again, no. They wouldn't understand that they're entering into an agreement. They wouldn't have, they wouldn't be on reasonable conspicuous notice here. You think that's crystal clear as a matter of law? We think at a minimum that reasonable minds could disagree. In which case, under this court's decision in the COSHA, that's a matter of fact that the district court found reasonably against Uber in this case. The district court reasonably found that there was not reasonably conspicuous notice here and also found reasonably that there was no unambiguous manifestation of assent by merely clicking a register button. Now this court and other courts have made very clear how Uber could have done this in a way that would be enforceable as a matter of law. And so this court in Register.com and in the COSHA and in Sharkey and the Seventh Circuit and Segoras have all said the way to do this is through a click rat mechanism where there's an I agree button or an I accept. An I agree click button would eliminate any question but our cases do recognize that you don't have to have it, right? This court's cases have recognized to date that it's not required and yet the point that I'm making is that it is very easy for Uber to do it that way. They've done it in other instances that way. We cite the Mohammed case. There's the Singh case under the District of New Jersey recently in which Uber used an I agree button and actually required the people who are the drivers in those cases to affirm to the terms and conditions on two different occasions. Both saying I agree, I agree and I've read. So this court has given that guidance to companies like Uber in the past. They could have easily have done that here, it's a safe harbor. They did not. They chose to push the envelope. Excuse me. So are you saying that the determination about whether a notice was reasonably conspicuous so as to signify that an actual assent was given is totally a question of fact and there's no legal element? There are certainly instances where no reasonable fact finder could have so concluded. I think that the click ramp example that I've given where if the terms and conditions are provided in a scroll mechanism and there's an I accept button, then we would submit that those would be cases in which the court could determine it as a matter of law. And you say Judge Rakoff was making a factual determination, not a determination that no reasonable fact finder could have found this reasonably conspicuous as a matter of law. Is that right? Here he was making a factual finding that there was no reasonably conspicuous notice and that there was no unambiguous manifestation of assent. And as we know from Nicosia, which post-dated Judge Rakoff's opinion by a few weeks or a month or so, those are factual findings that are entitled to deference that the district court made in this case. I would also just add, I have a few seconds remaining, that no court of appeals has done what defendants are asking this court to do, which is to reverse in the electronic contract context to reverse a conclusion by the district court that there was not reasonably conspicuous notice heard. Is it correct that many district courts have so held now with similar agreements? I don't know of any district court that has ruled on the same screen that's at issue in this case. Of course not, I mean we have so many variations on the screen, but- There are lots of variations. Counsel has pointed to, I mean, it's pointed to the guilt case. It's pointed to a number of cases in which the sequence is below, so that has not been a deterrent factor. And it's been about the size of this one, so the size of the notice has not been a deterrent factor. I mean, what do you see as distinguishing those cases? Well, there's, in all of those cases there, as the court just noted, there are variations in the way that they're set up. So, there's- How in a way that makes you more troubling? Sure, so sometimes there is parallel wording between the assent button and the language that's, the key language that's near the terms of service. In this case, there's not parallel wording. It says by creating an account versus press a button that says register. There are other differences. I mean, there's a lot of these cases. The point I think that's important, because there are so many variations, is that these are fact intensive inquiries. And that's exactly what Judge Rakoff has said. That's what the Segoras Court in the Seventh Circuit has said. These are fact intensive. And on this record that was presented below with declarations and reasonable conclusions in this case. Thank you. Thank you. Butchers. Thank you, Your Honor. Let me start with that last point. Not a single district court, other than the district court here, has found that there was not mutual assent in a situation that resembled this one. And with respect to Uber, we cited on page 25 of our brief, the image from another Uber case, a different screen, it's virtually identical. And I think the version that was used on the Samsung here was clearer. That's the Coulinane case. The Cordes case, another Uber case, this one's from the Northern District of California. Again, it's, if anything, I mean, it's a similar style. There are no material differences, and the disclosure information's at the bottom. The Cubria case that we submitted in a 28J letter earlier this week or at the end of last week. Again, an Uber case, virtually identical system. And we can't have district judges going on immaterial distinctions here. It's on the screen, right in front of the individual. And going to the question of whether it's a reasonable person or reasonable prudent smartphone user, in the spec case, this court said, the question was whether a reasonably prudent offeree of downloadable software would have been on notice. And here, someone who has taken ten rides on Uber, Mr. Meyerhead, by the time this complaint was filed, said in his complaint, that in order, this was in both the complaint and the amended complaint, that an individual to use Uber must first agree to the terms of service. There was backtracking on that, it argued. Yes. And there was an offer to even amend the pleading, so I'm not sure we can make much of that. But in any event, Your Honor, he used the app, and as I said, this was someone who knew what he was doing. And going to this question of an evidentiary hearing, counsel's suggesting that if you file a motion for summary judgment, and you say, decide my motion for summary judgment, and it's denied, the district court could then just resolve all the factual issues and treat it like a trial, unless you said, or give me a trial. That's not how it works, and here, the motion to compel arbitration, as this court said in Nicosia, Schnabel, other cases, is like a summary judgment motion, and I see my time is almost up. But let me just, or it is up, but if I could end with this, on the evidentiary hearing, when the district judge, this is at page 410 of the appellant's appendix, said, asked about the size of the font, and said he was going to have his clerk try to create a different version. He, Mr. Brodsky, my colleague, said, I'm not sure about the font size, and Judge Rakoff said, we could have an evidentiary hearing on that, and Mr. Brodsky said, we could. And then the judge said, but for today's purpose, assume it's a six point font. And the next thing we know, we get a decision, assuming it's a six point font, resolving factual issues against Uber on summary judgment. That's not a proper procedure, and none of those findings are entitled to any deference. And we think the court can decide this issue in our favor as a matter of law, but at a bare minimum, we should have more factual proceedings below. Thank you very much. Thank you to both sides. Thank you. We're going to take the case under advisement. Thank you. Thank you.